IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Case No. 09-10008-JTM

JUDAH PRINCE,

        Defendant.

MEMORANDUM AND ORDER

The court has before it defendant Judah Prince's motion to vacate under 28 U.S.C. § 2255. (Dkt. 130). Prince argues that his sentence should be vacated because of ineffective assistance of counsel. After a thorough review of the grand jury and trial transcripts, the court does not find his counsel's assistance to have been ineffective and denies the motion accordingly.

**I. Background**

In January 2008, ATF agents from Georgia were conducting an investigation into the illegal manufacture and sale of firearms by Mr. Raybon Wilson through an online site called "Gunbroker.com." During the investigation, the ATF determined that some AK-47 flats had been shipped to Prince. Flats are pieces of metal with laser perforations and holes, which allegedly could be folded to become part of a firearm. Based solely upon the purchase of the flats, the Georgia ATF office made a referral to the Wichita ATF office.

On January 9, 2008, ATF Special Agent Wes Williamson and Greg Heiert were assigned to look into Prince's purchase of the AK-47 flats. Around 11:00 a.m., Special Agents Williamson and Heiert and Newton Police Detective Bryan Hall went to Prince's place of employment, King Construction, to speak with him. After visiting briefly, Prince agreed to meet the officers at his residence in Newton, Kansas, over his lunch hour, giving the officers his home address. At his house, Prince explained to the investigators that the items they wanted to see were in his garage. Prince opened the garage door and showed the investigators the items he believed they were interested in seeing. The agents observed several firearms and asked Prince additional questions including whether they could search his home. Prince answered many of the questions but ultimately refused the officer's request to look through his home.

After the lunch-time encounter, the agents executed a search warrant for possible illegal weapons at Prince's home. During the search of the residence, officers observed in plain view several plants of marijuana and an apparatus for growing it. A second search warrant was then obtained from a Harvey County judge based on those observations, and those items were then seized.

Ultimately, Prince was indicted by a grand jury and tried by jury for manufacturing marijuana, twenty-five counts of false statements in connection with purchase of a firearm, and unlawful use of a controlled substance while possessing a firearm. He was convicted by the jury of the marijuana manufacturing and false statement counts. He was acquitted of unlawful use of a controlled substance while possessing a firearm.

Prince now claims that several statements made by government witnesses at the grand jury proceedings and at the jury trial amount to prosecutorial misconduct. His § 2255 challenge claims that his counsel's failure to cross-examine these witnesses and to properly argue prosecutorial misconduct constituted ineffective assistance in violation of Prince's Sixth Amendment rights.

**II. Legal Standards**

A petitioner may bring a § 2255 motion when he claims (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose such sentence, (3) the sentence was in excess of the maximum authorized by law, (4) there has been a denial or infringement of his constitutional rights, or (5) any other reason that the judgment or sentence are otherwise subject to collateral attack. 28 U.S.C. § 2255(a)-(b) (2006). "The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct." *United States v. Smith*, No. 05-20104-01-KHV, 2010 WL 1816331, at *2 (D. Kan. Mar. 1, 2010) (citing *Klein v. United States*, 880 F.2d 250, 253 (10th Cir.1989)). The defendant must show a defect in the proceedings that resulted in a complete miscarriage of justice. *Davis v. United States*, 417 U.S. 333, 346 (1974).

In order to prevail on an ineffective assistance of counsel claim, "the defendant must show that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (alterations added). "The benchmark for judging any claim of ineffectiveness must be

3

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. An attorney must give reasonably effective assistance in light of prevailing professional norms. *Id*. at 687–88. The burden is on the defendant to show that the attorney's "representation fell below an objective standard of reasonableness." *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Prejudice exists if counsel's acts or omissions "would have raised in a juror's mind a reasonable doubt concerning his guilt." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004) (citing *Strickland*, 466 U.S. at 694-95). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

**III. Analysis**

The court finds Prince's ineffective assistance claim unpersuasive. The weight of evidence against Prince was overwhelming. Mr. Timothy Henry— Prince's counsel— cross-examined each witness vigorously and effectively on his client's behalf. Mr. Henry had good reasons not to cross-examine the witnesses on the points Prince claims

4

he should have. First, Mr. Henry understood that the statements were not false or misleading. Second, any inconsistencies were so immaterial and the likelihood of any member of the jury caring about the issue so remote that the tactics suggested by Prince were unnecessary. Third, Mr. Henry attacked the witnesses' testimony on more productive grounds. Mr. Henry used his discretion reasonably in deciding how to present Prince's defense. Accordingly, Prince's § 2255 challenge fails.

The U.S. Supreme Court in *Strickland v. Washington* stated that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* "[T]he manner in which counsel cross-examines a particular witness is a strategic choice and therefore 'virtually unchallengeable.' " *Kessler v. Cline*, 335 Fed. Appx. 768, 770 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "Decisions on how to question a witness are generally committed to counsel's discretion." *Cannon v. Mullin*, 383 F.3d 11252, 1163 (10th Cir. 2004) (internal citation omitted). The U.S. Court of Appeals for the Tenth Circuit has held that counsel's cross-examination must be so objectively unreasonable that a reasonable jurist could find that it violates the Sixth Amendment. *See Kessler*, 335 Fed. Appx. at 770.

Prince identifies over sixty statements made by the U.S. Attorney and government witnesses as false or misleading. Most of the challenged statements in Prince's petition have to do with references to machine gun parts or machine guns.

5

Prince objects on the basis that no machine gun or machine gun part was ever found in his possession. He confuses statements of intentions as statements of facts, claiming that government witnesses improperly accused him of possessing machine guns. The statements referring to machine guns or machine gun parts were all made to explain the officers' suspicions, not as statements of fact accusing Prince of possessing those items. Regardless, Prince was not charged with possession of machine guns, and Mr. Henry established the fact that none of the materials found at Prince's house qualified as machine guns. All of these statements were truthful and non-prejudicial, and Mr. Henry was not constitutionally required to cross-examine the witnesses based on them.

Prince objects to the government's characterizing his name change as being procured as a response to a prior conviction of his, but the witness merely stated that the name change took place after his conviction. But the facts established that Prince had changed his name after his first conviction. The immaterial inference Prince objects to was neither stated nor implied by the government witnesses. That the prosecutor initially referred to Prince's old name as an "alias" is accurate, despite its negative connotation, and is nonetheless immaterial.

Prince argues Mr. Henry should have exploited inconsistencies in the witnesses' arguments to destroy their credibility. But the inconsistencies Prince notes are immaterial and would not have resulted in changing the jury's mind. For example, one witness claimed that Prince became evasive when the federal agents met him at his home and started asking questions. However, when asked about Prince's demeanor, a different witness testified that he "didn't remember anything that stuck out. [Prince]

6

wasn't acting abnormally." Prince claims this difference in the testimonies calls into question the first witness' credibility. However, Prince neglects to mention that on cross-examination of this witness, Mr. Henry established that Prince was cooperative.

Prince also claims that his attorney should have argued that the government had not proved beyond a reasonable doubt that the house where the marijuana was found belonged to him. But there was substantial evidence that this was his house. When the agents first contacted Prince at work, Prince said he would meet them at his house over his lunch break, giving them the address for the place where the marijuana was found. The government also introduced mail in Prince's name that had been delivered to the address. Mr. Henry made a prudent decision to focus his challenges elsewhere.

As the Tenth Circuit has previously announced, "the manner in which counsel cross-examines a particular witness is a strategic choice and therefore 'virtually unchallengeable.' " *Kessler v. Cline*, 335 Fed. Appx. 768, 770 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). The court finds that the statements by government witnesses at issue were not false or misleading, especially not to the point of being prejudicial. Mr. Henry's failure to cross-examine on these statements certainly did not fall below the threshold required for effective assistance. Mr. Henry's cross-examination of witnesses, indeed his entire representation of Prince, was not "so objectively unreasonable that a reasonable jurist could find that it violates the Sixth Amendment." *See id*.

IT IS THEREFORE ORDERED this 18th day of March, 2013, that Prince's motion to vacate pursuant to § 2255 (Dkt. 130) is denied.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE